# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT A. GREEN, individually and as the representative of a class of similarly-situated persons, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | No. 08 CV 194 |
| | ) | |
| v. | ) | Judge Norgle |
| | ) | |
| TIME INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, ROBERT A. GREEN, responds as follows to the Motion to Dismiss filed by Defendant, TIME INSURANCE COMPANY.

## INTRODUCTION

Defendant faxed an advertisement to Plaintiff's fax machine without first obtaining Plaintiff's express permission or invitation. The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits the faxing of such "unsolicited advertisements" or "junk faxes."

Defendant's Rule 12(b)(6) Motion to Dismiss argues that Defendant's fax (Exhibit A to the Complaint) is not an "advertisement" because, Defendant argues, the fax did not advertise Defendant's "property, goods, or services." Defendant is incorrect. The TCPA defines "advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services…." 47 U.S.C. 227(a)(5). Defendant's fax to Plaintiff advertised the "availability or quality" of Defendant's insurance products. Therefore, the fax is an "advertisement" and the Court should deny Defendant's motion.[1]

---

[1]     Plaintiff voluntarily dismissed Counts II and III of his Complaint and, for that reason, the Court denied as moot Defendant's motion to dismiss those two counts. Doc. 13 (1/15/08). Count I is all that remains.

## LEGAL STANDARD

In reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Turner/Ozanne v. Hyman/Power*, 113 F.3d 1312, 1319 (7th Cir. 1997); *Neumann v. Carlson Envtl., Inc.*, 429 F. Supp. 2d 946, 950 (N.D. Ill. 2006); *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 904 F. Supp. 753, 756-57 (N.D. Ill. 1995). The court should grant the motion only if it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle him to relief. *See Strasberger v. Bd. of Educ.*, 143 F.3d 351, 359 (7th Cir. 1998); *Neumann*, 429 F. Supp. 2d at 950; *Bankcard Am.*, 904 F. Supp. at 756-57.

## ARGUMENT

Defendant argues that its fax was not an "advertisement," but Defendant is wrong. The fax attached to Plaintiff's Complaint as Exhibit A is attached here as <u>Exhibit A</u>. The TCPA broadly defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services…." 47 U.S.C. 227(a)(5). Plaintiff alleges that Defendant's fax is an "advertisement." Complaint ¶¶ 21, 24. Defendant's fax advertised the commercial availability or quality of Defendant's insurance products. Defendant's four-page fax advertised that Defendant's insurance products are *available* for Plaintiff and other recipients to sell and the fax advertised the *quality* of those products. Therefore, it was an "advertisement."

### A. The Court should broadly construe the TCPA's definition of "advertisement."

Because the TCPA is a remedial statute, the Court should broadly, not narrowly, construe the TCPA's definition of "advertisement." *See, e.g., Kenro, Inc. v. Fax Daily, Inc.,* 962 F. Supp 1162, 1167 (S.D. Ind. 1997); *Texas v. American Blast Fax, Inc.,* 121 F. Supp. 2d 1085, 1091 (W.D. Tx. 2000). "Remedial statues should be liberally construed and interpreted (when that is

possible) in a manner tending to discourage attempted evasions by wrongdoers." *Scarborough v. Atlantic Coast Line,* 178 F.2d 253, 258 (4th Cir. 1950); *see also Sachs v. Ohio Nat. Life Ins.,* 131 F.2d 134, 137 (7th Cir. 1942) ("remedial statutes should be liberally construed, so as to prevent destruction of the purpose of the legislation"). Exemptions from remedial statutes "are to be construed narrowly to limit exemption eligibility." *Hobar Agua y Vida en el Desierto, Inc. v. Suarez-Medina,* 36 F.3d 177, 182 (1st Cir. 1994); *see also EEOC v. City of Janesville,* 630 F.2d 1254, 1258 (7th Cir. 1980) ("an exemption to a remedial statute must be narrowly construed").

**B.    Defendant's fax is an "advertisement."**

Defendant argues its fax was not an "advertisement, because "Time did not attempt to sell insurance to Plaintiff." Mot. at p.4. As noted above, the definition of "advertisement" does not focus on whether the sender attempted to sell something directly to the recipient. Indeed, the FCC has explained that faxes sent to potential intermediaries—like potential insurance agents—are "advertisements." *In Re Matter Of Rules & Regs. Implementing The Tel. Consumer Protection Act Of 1991 And The Junk Fax Prevention Act Of 2005,* 2006 WL 901720, 21 F.C.C.R. 3787, at 3814-15 (April 6, 2006) ("[A] mortgage rate sheet sent to a broker or other intermediary or a price list sent from a wholesaler to a distributor (*e.g.,* food wholesaler to a grocery store) for the purpose of communicating the terms on which a transaction has already occurred are not advertisements. … [But] a rate sheet on financial products transmitted to a *potential* borrower or *potential* brokers … would require the sender to either have an established business relationship with the recipient or first obtain express permission from the recipient.").

Here, Defendant's four-page, fax advertised that Defendant's insurance products are *available* to Plaintiff and other recipients to sell to their clients and the fax advertised the *quality* of its insurance products. Defendant sells insurance products through licensed insurance agents. *See* Complaint Exhibit A (requesting "a copy of your insurance license" and "a copy of your

personal health and life license for your resident state and each non-resident state in which you intend to operate"). On October 9, 2007, Plaintiff received an unsolicited fax from Defendant's "Regional <u>Sales</u> Office" offering Plaintiff the "opportunity" to become a "General Agent" to sell Defendant's insurance products.[2] The fax identifies both Time Insurance and Assurant Health. At the bottom of its first page, the fax states, "Assurant Health <u>markets</u> products underwritten by Time Insurance Company." Complaint Exhibit A (emphasis added).[3] Defendant's fax is part of that marketing effort, because the products are sold through licensed insurance agents and the fax was sent to such agents soliciting them to sell Defendant's available products.

The first paragraph of the first page of Defendant's fax contains statements about why the recipient should sell Defendant's insurance products, such as "the most lucrative contract available," "opportunity for bonus programs & rewards," and "gives [recipient] ownership rights of the business written." These statements are designed to induce the recipient to sign the three-page "Appointment Application" attached to that first page to become a General Agent for Defendant. The second paragraph contains statements about the quality of Defendant's insurance products. Complaint Exhibit A ("We're an A rated company that's been doing business for over 115 years." "Our underwriting is second to none." "We also set up a Free Web Page to help you grow your business and offer bi-weekly product training"). The third paragraph requests the recipient to "call with any questions," "fax [the] contract back to

---

[2]    Defendant implies that it already had a business relationship with Plaintiff—"Time did nothing more than attempt to impact its 'existing professional relationship' with Plaintiff"—but that implication is false. Mot. at p. 3. Further, Defendant's self-serving statements at the bottom of its fax, stating that the fax is not an advertisement and that the fax "impact[ed an] existing relationship," are part of a ruse to make the fax look legitimate and to trick the recipient into believing it is not illegal. Earlier in the fax, Defendant itself indicated that it did not intend to send the fax to any existing agents. The fax states, "Please disregard if you are currently a GA (General Agent) with Assurant Health." Complaint Exhibit A.

[3]    According to www.assuranthealth.com—one of the two websites identified on the fax—Assurant Health "is the brand name for products underwritten and issued by Time Insurance Company…." *See http://www.assuranthealth.com/corp/ah/AboutAssurantHealth/.*

[Defendant]," or go on to one of Defendant's websites (www.timeagent.com) for more information about becoming a General Agent to sell Defendant's insurance products. All of this advertises the *availability* and *quality* of Defendant's insurance products. The fax seeks to create business for Defendant and to promote Defendant's products. The fax is an "advertisement."

### C.    Other Courts Have Broadly Interpreted The TCPA's Definition of "Advertisement."

Faxes that have the effect and purpose of advertising services, property, or goods—whether directly or indirectly—violate the TCPA. *See Rudgayzer & Gratt v. Enine, Inc.*, 2004 WL 877852 (N.Y. App. Apr. 14, 2004) (Exhibit B). *Rudgayzer* held that an unsolicited fax identifying the defendant's company name and contact information was an unsolicited advertisement within the meaning of the TCPA. *Id*. at *8. The fax did not expressly invite recipients to buy services, but the New York court reasoned that the fax had the purpose and effect of influencing fax recipients to buy the services mentioned by associating the defendant with the services. *Id*. at *7-8. The court held that if a fax "pitches a product or service under the guise of providing information about it" then it is an "advertisement." *Id*. at *8.

In *Schumacher Fin. Svcs., Inc. v. Steckelberg,* No.: 03 AC-8706 Y CV (Mo. Cir. Ct., Oct. 14, 2003) (Exhibit C), the Missouri trial court noted that Webster's dictionary defines "advertise" as "to make something known; to notify," and the court stated that, to be an "advertisement" under the TCPA, a fax "need only make known to, or notify, someone about the commercial availability of any property, goods or services." *Id*. at * 5. The court explained:

> It is hard to miss the numerous solicitations any professional or business person receives for similar industry reports in business areas such as tax planning, marketing assistance, and general business advice. While many are fee-based, some are also offered at no charge as in the fax at issue here. The Court concludes that whether a fee is or is not charged is irrelevant for purposes of the TCPA. Indeed, a report such as this may be offered for free in one location on one day, and then the very same report may be offered for a fee in a different location on a different date, much like a new hardware store may give away items

such as a garden hose during a grand opening sale, and then charge for the same garden hose the next day. This does not change the character of the item and make it a "product" on one day, and not on the other.

* * *

The fax in this case does "notify" the recipients about both the existence of the report and Defendant's business. Thus, the question is reduced to whether the report or any portion thereof constitutes "property, goods or services." The Court holds that the report is a product offered by Defendant. [*Schumacher,* at *5-*6.]

In *Micro Engineering v. St Louis Ass'n of Credit Mgmt., Inc.,* No. 02 AC 8238 X CV (Mo. Cir. Ct., Aug. 13, 2002) (Exhibit D), the Missouri trial court held that the fax advertising a "free" seminar was an "advertisement" under the TCPA. The court held, "These faxes clearly do 'announce' the luncheons defendant offers. It is clear that such professional functions are offered as a service, albeit ostensibly a free service." *Id.* at p.4.

Finally, in *Harjoe v. Colonial Life & Accident Ins. Co.,* No. 02 CC-1983, at p.3 (Mo. Cir. Ct. Aug. 29, 2002) (Exhibit E), the Missouri trial court held that faxes about the availability of commercial insurance were "advertisements." The court noted, "Defendant argues that nothing is being offered 'for sale' by the faxes." *Id.* at *3. "But there is no requirement that to be covered by the statute, that the goods or services advertised actually must be for sale to the recipient." *Id.* "The only have to be 'advertised.'" *Id.* "Defendant is clearly engaged in a commercial insurance business, and the fax in question does notify the recipient about the existence of Defendant's insurance wares and their commercial availability." *Id.* at *3-*4.

These trial court opinions are not binding on this Court and they are offered only for their persuasive analyses of the "advertisement" issue.

### D.    Defendant's Trial Court Opinions Are Factually Distinct And Not On Point.

Defendant primarily relies upon three cases. *Ameriguard, Inc. v. University of Kansas Medical Center Research*, 2006 WL 1766812 (W.D. Mo. June 23, 2006) (Gregory, J.); *Lutz Appellate Services, Inc. v. Curry*, 859 F. Supp. 180 (E.D. Pa. 1994); and *Phillips Randolph*

*Enterprises, LLC v. Adler-Weiner Research Chicago*, 2007 WL 293928 (N.D. Ill 2007) (Bucklo, J.).  None of those cases supports dismissal here.

First, the fax at issue in *Ameriguard* was not an advertisement because it was used solely for the promotion of medical research.  The fax sought participants for a clinical research trial for the "prevention of diabetes."  *Ameriguard*, 2006 WL 1766812, at *1.  The fax provided general information about diabetes and "Pre-Diabetes," announced a clinical research trial, and stated that "[p]articipants who qualify receive study related medical care, study medication and diet and exercise counseling at no cost.  Participants will also receive compensation for their time and travel."  *Id.* at * 1.  The district court found that, as a matter of law, the fax was non-commercial.  *Id* at * 2.  In contrast to the fax at issue in *Ameriguard*, Defendant's fax had a commercial nature because it advertised the availability and quality of Defendant's insurance products and solicited business owners (insurance agents) to sell them.  Insurance underwriting, specifically mentioned in Defendant's fax, is a commercially available service.

Second, the faxes at issue in *Lutz*, are not analogous to Defendant's fax.  The faxes in *Lutz* stated "Curry & Taylor Is Now Hiring … All Positions … Call Today 1-800-222-8738."  *Id.*, 859 F. Supp. at 181.  The court focused on whether the fax advertised the commercial availability of "property."  *Id*. at 181.  The court did not address whether the faxes advertised the availability or quality of "goods" or "services."  The court likened the faxes to a "help wanted" sign and decided they were not "advertisements."  *Id*.  In contrast to the *Lutz* fax, Defendant's fax was not a "help wanted" sign attracting new employees of Defendant, but rather an advertisement about the commercial availability and quality of Defendant's insurance products that also sought to induce Plaintiff to sell them for Defendant.  Therefore, the faxes at issue are different.  More important, in *Missouri v. American Blast Fax, Inc.*, 323 F.3d 649 (8th Cir.

2003), the Appellate Court noted that *Lutz* was wrongly decided.  Discussing *Lutz*'s court-created exception for faxes advertising job openings, the Eighth Circuit stated, "[n]ot only are these 'exceptions' not in the statute, but they would undermine the Government's asserted purpose."  *Id*., 323 F.3d at 657 n.6.  This Court should not follow *Lutz*.

Third, the fax at issue in *Phillips Randolph* invited the recipients "to participate in a research discussion on the topic of a new healthcare program by the Chicagoland Chamber of Commerce."  2007 WL 293928 at *4.  The court held that the fax was not an "advertisement." "On its face, the fax does not promote a 'commercially available service,' but a research study." *Id*. at *2.  Unlike the *Phillips Randolph* fax promoting a research study, Defendant's fax advertised "commercially available" insurance products, advertised their quality, and sought to induce a commercial relationship with Plaintiff.  Defendant's fax was an "advertisement."

## CONCLUSION

Because Defendant's fax is an "advertisement"—"material advertising the commercial availability or quality of any property, goods, or services"—the Court should deny Defendant's Motion to Dismiss.

Respectfully submitted,
ROBERT A. GREEN


By:    /s Phillip A. Bock
One of his attorneys

Brian J. Wanca                                  Phillip A. Bock
Ryan M. Kelly                                    Robert M. Hatch
ANDERSON + WANCA                    BOCK & HATCH, LLC
3701 Algonquin Road, Suite 760        134 N. La Salle St., Suite 1000
Rolling Meadows, IL  60008              Chicago, IL  60602
Telephone: 847/368-1500                    Telephone:  312/658-5000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that, on February 8, 2008, he caused a copy of the foregoing *Plaintiff's Response to Defendant's Motion to Dismiss*, to be served on all counsel of record via the ECF system.

<u>/s Phillip A. Bock</u>