*Schumacher Fin. Servs., Inc. v. Steckelberg*, 2003 TCPA Rep. 1236 (Mo. Cir. Oct. 14, 2003)

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

SCHUMACHER FINANCIAL SERVICES, INC., Plaintiff,

v.

DAVID STECKELBERG, Defendant

Cause No.: 03AC-008706 Y CV

Division 39

Oct 14, 2003

NOTICE: The rules of some jurisdictions may impose limitations on the use of materials not designated for publication in certain officially sanctioned reporters. Consult the rules of the applicable jurisdiction regarding use and citation of this opinion.

**RESULT:**

Defendant's motion to dismiss denied.

**SYNOPSIS:**

Defendant sought to dismiss plaintiff's claims under the TCPA for an unsolicited fax sent into Missouri, arguing that the Missouri court lacked personal jurisdiction over defendant, and that the fax in question was not covered by the state. The court held that sending a facsimile advertisement into Missouri satisfied the "transaction of any business" and the "tortious act" prongs of the Missouri long arm statute so that the Missouri court has specific jurisdiction over the out-of-state sender of the fax for a cause of action under the TCPA. The court also found that the "offer of a free report" in the fax was material advertising the commercial availability of any property, goods, or services so as to be subject to the TCPA.

**SUBSEQUENT HISTORY:**

**PRIOR HISTORY:**

**CITED BY:**

*Vertex Chem. Corp. v. Asphalt Paving Equip.*, LLC, 2004 TCPA Rep. 1263 (Mo. Cir., Feb. 17, 2004).

*Marquis Fin. Corp. v. Salter*, 2004 TCPA Rep. 1332 (Mo. Cir., June 3, 2004).

*Psych. Assoc. v. Whittemore Corp.*, 2005 TCPA Rep. 1371 (Mo., Cir. Jul 22, 2005).

**APPEARANCES:**

Max Margulis, Margulis Law Group, Chesterfield Missouri for Plaintiff.

David Steckelberg, *pro se* for defendant.

**JUDGES:**

Judge Patrick Clifford

**HOLDINGS:**

[☞1] **Personal Jurisdiction**

A TCPA cause of action arises directly out of the contact Defendant directed to Plaintiff

[☞2] **Unsolicited Advertisement**

The statute does not require that a price must be associated with the products, goods, or services mentioned – only that the fax advertise their "commercial availability" or their "quality."

[☞3] **Unsolicited Advertisement**

To be subject to the TCPA, a fax need only make known to, or notify, someone about the commercial availability or the quality of any property, goods or services.

[☞4] **Unsolicited Advertisement**

"Commercial" is defined by Webster's to mean: "1) of or relating to commerce; engaged in commerce; involved in work that is intended for the mass market." It is clear from the fax that the report being mentioned is intended for the mass market.

[☞5] **Unsolicited Advertisement**

Whether a fee is or is not charged for the property, goods, or services mentioned in an unsolicited fax, is irrelevant for purposes of the TCPA.

**OPINION:**

ORDER

[*1] This matter came before the Court for argument on October 14, 2003 on Defendant's Motion to Dismiss. The parties have filed memoranda of law and the Court has heard the arguments of both parties.

Plaintiff brought suit against Defendant under the private right of action provided in 47 U.S.C. § 227(b), the Telephone Consumer Protection Act, ("TCPA"). Plaintiff alleges that Defendant sent one [FN1] facsimile containing an unsolicited advertisement to Plaintiff's fax machine in Missouri, and that this fax violates the TCPA and subjects Defendant to the personal jurisdiction of the Missouri Courts.

> [FN1] Plaintiff alleges only one fax was sent to his fax machine, and the Court assumes this is true for the purposes of this motion. However, were the Court inclined to find a single fax transmission sent into this state was insufficient to satisfy personal jurisdiction, Plaintiff would be entitled as a matter of law to discovery to determine the extent of Defendant's other contacts with Missouri. *Shouse v. RFB Construction Co., Inc.*, 10 S.W.3d 189, 194 (Mo. App. W.D. 1999) ("Of course, the parties have the right to conduct discovery to demonstrate whether [defendant] has such substantial business or contacts.")

**1. Standard of Review**

On a motion to dismiss, "we accept as true the facts properly pleaded, giving the averments a [*2] liberal construction, and making those reasonable inferences fairly deducible from the facts stated." *Concerned Parents v. Caruthersville School Dist. 18*, 548 S.W.2d 554, 558 (Mo. 1977). The facts as pleaded, claim that Defendant sent the fax in question to Plaintiff on or about July 11, 2002. These facts are assumed true for the purposes of this motion. A Motion to dismiss tests only the sufficiency of the pleadings.

**2. Standard for asserting personal jurisdiction**

When a defendant asserts lack of personal jurisdiction in a motion to dismiss, a plaintiff bears only the minimal burden of establishing a *prima facie* case that (1) the suit arose out of the activities enumerated in the Missouri long-arm statute, Section 506.500 RSMo.; and (2) the defendant has sufficient contacts with Missouri to satisfy due process requirements. *Schilling v. Human Support Svcs.*, 978 S.W.2d 368, 370-71 (Mo. App. E.D. 1998). "The basic due process test is whether the defendant has 'purposefully availed itself of the privilege of conducting activities within the forum state.'" *Farris v. Boyke*, 936 S.W.2d 197 (Mo. App. S.D. 1996) citing *Elaine K. v Augusta Hotel Assocs. Ltd. Partnership*, 850 S.W.2d 376, 378 (Mo. App. E.D. 1993).

Section 506.500, RSMo 1994, states:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state;

(4) The ownership, use, or possession of any real estate situated in this state;

[*3] (5) The contracting to insure any person, property or risk located within this state at the time of contracting;

(6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.

Jurisdiction is proper under due process where "the defendant has 'purposely directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-473 (1985).

The most recent Missouri case on long arm jurisdiction is *Products Plus Inc. v. Clean Green, Inc.* decided August 13, 2003 (Case No. 25352 S.D.) which explained that:

[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

Missouri's long arm statute is intended to reach "to the fullest extent permissible under the due process clause of the Fourteenth Amendment." *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889 (Mo. banc 1970). Missouri courts have been explicit that the exercise of long arm jurisdiction "is not susceptible to mechanical application; rather the facts of each case must be weighed to determine whether requisite affiliating circumstances are present." *State ex rel. Sperandio v. Clymer*, 581 S.W.2d 377, 382 (Mo. banc 1979).

The issue of whether faxes or telemarketing calls sent or made to Missouri residents will subject the sender to the personal jurisdiction of Missouri courts under the TCPA is not new to St. Louis courts. See *R.F. Schraut Heating & Cooling, Inc. v. Maio Success Sys., Inc.*, 2001 TCPA Rep. [*4] 1038, No. 01AC11568 (Div. 39, Mo. Cir. Ct. Aug. 14, 2001); *Brentwood Travel, Inc. v. Lancer, Ltd.*, 2001 TCPA Rep. 1018, 01CC-000042 (Div. 45, Mo. Cir. Ct. Feb. 21, 2001) (unsolicited faxes); *Margulis v. VoicePower Telecom., Inc.*, 2001 TCPA Rep. 1023, . 00AC-013017 (Div. 39, Mo. Cir. Ct. March 22, 2001) (telemarketing calls). Defendant has presented nothing to challenge the analysis presented in those cases.

Defendant relies on *FDIC v. Malmo*, 939 F.2d 535 (8th Cir. 1991) and *CPC-Rexcell, Inc. v. La Corona Foods, Inc.*, 912 F.2d 241 (8th Cir. 1990), in support of his motion. These cases however are distinguishable. [1] In the case at bar, the TCPA cause of action arises *directly* out of the contact Defendant directed to Plaintiff – much like the typical law school example of a of shooting a gun across state lines. A Missouri court will have personal jurisdiction over the shooter for a cause of action arising out of the gunshot across the border, but not for some other cause of action such as a contract dispute. *FDIC* was a legal malpractice action against an out of state attorney

who solicited a client in Missouri via a letter sent into Missouri. The malpractice cause of action did not arise out of the letter itself. *CPC-Rexcell* is similarly distinguishable in that the cause of action was not based on an injury arising from the communications themselves.

### 3. Is the fax covered by the statute?

It is not disputed that Defendant sent the fax at issue to Plaintiff's fax machine without prior express permission or invitation. In essence, the only question before the Court is whether or not the fax at issue is an "unsolicited advertisement" as defined by the TCPA. "Unsolicited advertisement" is defined as:

any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission.

[*5] 47 U.S.C. § 227(a)(4). Defendant claims that the fax at issue as "an offer of a 'free report'" and argues that "'[c]ommercial availability' also implies that a cost or price would be associated with the offer."

The Court does not agree with Defendant's restrictive interpretation of "commercial availability." [☞2] The statute does not require that a price must be associated with the products, goods, or services mentioned – only that the fax advertise their "commercial availability" or their "quality." Applying the plain language of the term "advertise" (defined by Webster's dictionary as "to make something known; to notify") [☞3] the fax need only make known to, or notify, someone about the commercial availability or the quality of any property, goods or services. [☞4] "Commercial" is defined by Webster's to mean: "1) of or relating to commerce; engaged in commerce; involved in work that is intended for the mass market." *Id.* It is clear from the fax that the report being mentioned is intended for the mass market.

It is hard to miss the numerous solicitations any professional or businessperson receives for similar industry reports in business areas such as tax planning, marketing assistance, and general business advice. While many are fee-based, some are also offered at no charge as in the fax at issue here. [☞5] The Court concludes that whether a fee is or is not charged is irrelevant for purposes of the TCPA. Indeed, a report such as this may be offered for free in one location on one day, and then the very same report may be offered for a fee in a different location on a different date, much like a new hardware store may give away items such as a garden hose during a grand opening sale, and then charge for the same garden hose the next day. This does not change the character of the item and make it a "product" on one day, and not on the other.

Further support for this conclusion is found in the fact that the FCC, which is the administrative [*6] agency with authority to implement the TCPA, has interpreted the TCPA's definition of materials "advertising the commercial availability or quality of any property, goods, or services" as including materials offering items free of charge. In this regard, the FCC aptly noted:

The TCPA's definition does not require a sale to be made [by the solicitation] in order for the message to be considered an advertisement. Offers for free goods or services that are part of an overall marketing campaign to sell property, goods, or services constitute "advertising the commercial availability or quality of any property, goods, or services."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144-01 at ¶ 140. The interpretation of any statute by the administrative agency overseeing that statute is due great deference. *Griggs v. Duke Power Co.*, 401 U.S. 424, 434 (1971); *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984). "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.*, 467 U.S. at 843, n 11 (additional

citations omitted). [FN2]

> [FN2] For a discussion of the policy of deference to agency construction, see *Chevron and Canons of Statutory Construction*, 58 Geo. Wash. L. Rev. 829 (1990).

The fax in this case does "notify" the recipients about both the existence of the report and Defendant's business. Thus the question is reduced to whether the report or any portion thereof constitutes "property, goods or services." The Court holds that the report is a product offered by Defendant.

A very similar question with respect to the TCPA has been decided by this very Court. In *Micro Engineering, Inc. v. St. Louis Assoc. of Credit Management, Inc.*, 2002 TCPA Rep. 1080, 02AC-0082338 (Mo. Cir. Aug 13, 2002), this Court held that a facsimile advertising a "free" seminar was in fact an "unsolicited advertisement" under the TCPA. "These faxes clearly do 'announce' the [*7] luncheons Defendant offers. It is clear that such professional functions are offered as a service, albeit ostensibly a free service." *Id., at 4*. Both *Micro Engineering, supra*, and *Harjoe v. Colonial Life & Accident Ins. Co.*, 2002 TCPA Rep. 1065, 02AC-001983 (Div. 45, Mo. Cir. Ct. Aug. 29, 2002) noted the appropriateness of a remedial construction of the TCPA:

> While a court can not adopt a construction of a statue that is contrary to its plain language, the TCPA is a remedial consumer protection statute and "should be liberally construed and interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *Scarborough v. Atlantic Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1950). Exemptions from provisions of remedial statutes "are to be construed narrowly to limit exemption eligibility." *Hogar v. Suarez-Medina*, 36 F3d 177, 182 (1st Cir 1994). *See, e.g.*, the very first paragraph of the Missouri Revised Statues, which requires "all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." RSMo.§ 1.010. Defendant's fax is an advertisement of Defendant's services that the "true intent and meaning" of the TCPA addresses.

*Micro Engineering, at *4*. These canons of construction reinforce the inescapable conclusion that the fax at issue in this case lies within the purview of the statute.

## CONCLUSION

The Petition sets out that Defendant directed his activities at a telephone number that is in the 314 area code, which serves only Missouri. Defendant is in complete control of what forums he is exposed to in a TCPA action by his own choice of which states he targets with his advertising transmissions. He directed his activities at the consumers in Missouri. He clearly should expect to be subject to the jurisdiction of the Missouri courts based on that contact. Accordingly, sending an unsolicited fax advertisement into Missouri in violation of the prohibitions of the TCPA satisfies both the "transacting any business" and "tortious act in this state" prongs of the Missouri long arm statute and establishes personal jurisdiction in this state that is consistent with minimum contacts and due process under the Fourteenth Amendment.

[*8] Defendant has "transacted business" in this state by his advertising contact, and the cause of action has arisen out of that specific contact, giving rise to specific jurisdiction. Independently, Plaintiff has alleged that Defendant engaged in a tortious act with actionable consequences in this state. Plaintiff has thus made a *prima facie* case for personal jurisdiction and the court holds that the fax in question is subject to the provisions of the TCPA. Defendant's Motion is DENIED on both grounds raised.

IT IS SO ORDERED.

This the 14th day of October, 2003.

/s/ Patrick Clifford

Judge Patrick Clifford, Division 39

### # # #

Printed on Friday, February 08, 2008.

Copyright © 2007. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.