IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ROBERT A. GREEN, individually and as the representative of a class of similarly-situated persons,<br><br>        Plaintiff,<br><br>        v.<br><br>TIME INSURANCE COMPANY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>) No. 08 CV 194<br>)<br>) Judge Norgle<br>) Magistrate Judge Keys<br>)<br>) |

**PLAINTIFF'S MOTION FOR LEAVE TO SUBMIT ADDITIONAL PERSUASIVE AUTHORITY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

NOW COMES the Plaintiff, ROBERT A. GREEN, and hereby requests that the Court permit Plaintiff to submit additional persuasive authority in opposition to Defendant's Motion to Dismiss, *instanter*. In support thereof, Plaintiff states as follows:

1. Subsequent to the briefing on Defendant's Motion to Dismiss, on June 19, 2008, Judge Robert W. Gettleman, and on July 23, 2008, Judge Frederick J. Kapala entered orders rejecting many of the same arguments that Defendant makes in this case. A true and correct copy of Judge Gettleman's order in *Holtzman v. Turza*, No. 08 C 2014, 2008 WL 2510182 (N.D. Ill., June 19, 2008) is attached hereto as <u>Exhibit A</u>. A true and correct copy of Judge Kapala's order in *Stonecrafters, Inc. v. Almo Distributing New York, Inc*, No. 07 C 5105, (N.D. Ill., July 23, 2008) is attached hereto as <u>Exhibit B</u>.

2. Plaintiff requests that this Court permit it to submit the above-mentioned additional persuasive authority in opposition to Defendant's Motion to Dismiss, *instanter*. Plaintiff is not seeking leave to submit further briefing or argument.

WHEREFORE, Plaintiff respectfully requests leave to submit the opinions of Judge Gettleman and Judge Kapala as additional persuasive authority in opposition to Defendant's Motion to Dismiss, *instanter*.

Respectfully submitted,

s/Ryan M. Kelly
One of Plaintiff's Attorneys

| | |
|---|---|
| Brian J. Wanca | Phillip A. Bock |
| Ryan M. Kelly | BOCK & HATCH, LLC |
| ANDERSON + WANCA | 134 N. LaSalle Street, Suite 1000 |
| 3701 Algonquin Road, Suite 760 | Chicago, IL  60602 |
| Rolling Meadows, IL  60008 | Telephone:  312/658-5500 |
| Telephone:  847/368-1500 | |

## CERTIFICATE OF SERVICE

    I hereby certify that on August 22, 2008, I electronically filed this Motion for Leave to Submit Additional Authority in Opposition to Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                                                 s/Ryan M. Kelly
                                                 Ryan M. Kelly
                                                 Attorney for Plaintiff

| | |
|---|---|
| Brian J. Wanca | Phillip A. Bock |
| Ryan M. Kelly | BOCK & HATCH, LLC |
| ANDERSON + WANCA | 134 N. LaSalle Street, Suite 1000 |
| 3701 Algonquin Road, Suite 760 | Chicago, IL  60602 |
| Rolling Meadows, IL  60008 | Telephone:  312/658-5500 |
| Telephone:  847/368-1500 | |

**EXHIBIT A**

Slip Copy, 2008 WL 2510182 (N.D.Ill.)

<u>Motions, Pleadings and Filings</u>

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Ira HOLTZMAN, individually and as the representative of a class of similarly situated persons, Plaintiff,
v.
Gregory P. TURZA, Defendant.
No. 08 C 2014.
June 19, 2008.

<u>Brian J. Wanca</u>, Anderson & Wanca, Rolling Meadows, IL, for Plaintiff.

<u>Eric L. Samore</u>, <u>Darren Patrick Grady</u>, <u>Molly Anne Arranz</u>, Smith Amundsen, LLC, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT W. GETTLEMAN, District Judge.

*1 Plaintiff Ira Holtzman has sued defendant Gregory P. Turza for sending him by facsimile ("fax") an unsolicited advertisement in violation of the federal Telephone Consumer Protection Act ("TCPA"), <u>47 U.S.C. § 227</u>. Turza has moved to dismiss the claim under <u>Fed.R.Civ.P. 12(b)(6)</u> for failure to state a claim. For the reasons discussed below, defendant's motion is denied.

## BACKGROUND

Defendant is an attorney who operates a law practice in Skokie, Illinois. In November 2007, he had a one-page newsletter sent to plaintiff by fax. The plaintiff, who had never given defendant permission to do this, objected and filed suit. Given that the content of the facsimile is a central issue in this case, it is worthwhile to describe it in detail.[FN1] At the top of the page is the name of the newsletter, "The 'Daily Plan-It.'" These words are italicized, bolded, and underlined. Just below them, it states "Gregory P. Turza, JD," along with the date and volume and issue numbers. The design calls to mind a newspaper masthead. Beneath this "masthead," the facsimile is divided into two columns, which contain an editorial article offering advice about using computers. The lead headline states, "You *Can* Take it with You: Tips for A Mobile Office," and the text explains how to purchase a laptop, print documents "on the go," and protect data and computer hardware. This article runs the length of the left column and concludes in the middle of the right column. What appears in the remainder of the right column forms the crucial issue in this lawsuit. At the end of the article, in the lower right corner, defendant provides his name (in a font larger than any other type on the page, with the exception of "The 'Daily Plan-It'"), identifies himself as an attorney, and includes the words "estate planning," "post mortem administration," and "business succession planning" before his name. The fax also includes a logo, a photo of the building in which defendant has his office, his business address, telephone and fax numbers, e-mail address, and Web site. At the bottom of the fax defendant repeats his name and phone number. This "identifying information" occupies approximately 20 to 25 percent of the fax.

   FN1. A copy of the fax is attached as Appendix A.

## DISCUSSION

Defendant has moved to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not decide the merits. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). Federal notice pleading "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (citing *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to plaintiff. *Moranski v. Gen. Motors Corp.,* 433 F.3d 537, 539 (7th Cir.2005). Because the facsimile at issue is attached to the complaint, it is considered part of the complaint. *See id.* (citing Fed.R.Civ.P. (10(c))). Dismissal under Rule 12(b)(6) is appropriate if the plaintiff can prove no set of facts to support his claim. *First Ins. Funding Corp. v. Fed. Ins.* Co., 284 F.3d 799, 804 (7th Cir.2002).

**\*2** Plaintiff alleges that defendant violated the TCPA by faxing him an unsolicited advertisement. Defendant has moved to dismiss, arguing the fax is a newsletter and not an advertisement. Under the TCPA, it is unlawful to send an unsolicited advertisement to a telephone facsimile machine. 47 U.S.C. § 227(b)(1)(C). The statute defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The TCPA, however, permits unsolicited facsimiles that do not promote a commercial product or service. *See Phillips Randolph Enter., LLC v. Adler-Weiner Research Chicago, Inc.,* 526 F.Supp.2d 851, 852 (N.D.Ill.2007) (citing *In re Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005,* 2006 WL 901720, 21 F.C.C.R. 3787, at 3810 (April 6, 2006)). Because the parties agree that plaintiff did not invite or grant permission for defendant to send the facsimile, the sole issue is whether the facsimile is an advertisement under the TCPA.

According to defendant, the facsimile is an informational guide offering computer advice from a lawyer's perspective. He argues the inclusion of his contact information was merely meant to identify the author, not promote his services. There is some merit to this argument because the facsimile resembles a newsletter and includes headlines and editorial content. On the other hand, it is hard to escape the conclusion that the facsimile performs *some* advertising function. The statute's plain text does not require the facsimile to propose a sale, but merely just advertise the "commercial availability" of defendant's services. While the facsimile at issue may not make a direct, overt sales pitch to its recipients, at the very least it had the effect of informing them that defendant was an attorney who did work in estate planning, post mortem administration, and business succession planning. From there, a recipient would likely have inferred that defendant's services were commercially available and could be obtained by contacting the defendant at his office, by phone or fax, or through e-mail. To view it another way, if defendant had sent a facsimile that contained only his identifying information, it clearly would have been an advertisement. The inclusion of unrelated editorial content does not somehow insulate the "identifying information" from being labeled an advertisement.

Defendant primarily relies on two cases in arguing the identifying information, and thus the fax, should not be viewed as an advertisement. The defendant's publication, however, is fundamentally different from the facsimiles at issue in the two cases. In *Ameriguard, Inc., v. University of Kansas Research Institute, Inc.,* 2006 WL 1766812 (W.D.Mo. June 23, 2006), the defendant sent a fax announcing the existence of a clinical drug trial and seeking individuals willing to participate. The court held the facsimile did not constitute an advertisement because it did "not announce defendant is providing or otherwise *has available* goods, services, or property." *Id.* at \*1 (emphasis added). Similarly, in *Phillips Randolph Enter., LLC v. Adler-Weiner Research Chicago, Inc.,* 526 F.Supp.2d 851 (N.D.Ill.2007), defendant transmitted a fax inviting recipients to attend a research discussion. The court found the facsimile was not an advertisement because it did not promote a commercially available service. *Id.* at 853.

*\*3* In contrast to the facsimiles in *Ameriguard* and *Phillips,* "The 'Daily Plan-It' " announces the availability of defendant's services. Recipients could reasonably infer that defendant was offering his estate planning, post mortem administration, and business success planning services for sale, whereas the facsimiles in *Ameriguard* and *Phillips* gave no indication on their face that the sender wished to engage in a commercial transaction with the recipient. Plaintiffs in those cases, in other words, had no opportunity to purchase services from defendants. Thus, this court concludes the defendant's "identifying information" is an advertisement under the TCPA.

There is, however, a wrinkle in the instant case because the facsimile also contained a significant amount of editorial, non-advertising content. This brings the court to the question on which the case turns: At what point does advertising in a facsimile newsletter transform the entire facsimile into an "unsolicited advertisement" for purposes of the TCPA? The statute itself offers no explicit guidance about how to classify facsimiles with both editorial and advertising content. See *Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1170 (S.D.Ind.1997) ("Neither the text of the Act nor its legislative history gives any indication that Congress intended the prohibition to cover only material that is one-hundred percent advertising material; nor is there any guidance with regard to where to draw the line between 'advertisements' and other types of publications, when the publication in question contains both advertising material and news, editorial or other items.")

While the statute's definition of "unsolicited advertisement" could be read as banning even facsimile newsletters with just a smidgen of advertising, the F.C.C. did not adopt this interpretation in its regulations implementing the statute. Instead, the F.C.C. decided that:

> Facsimile communications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules. An *incidental advertisement* contained in a newsletter does not convert the entire communication into an advertisement. Thus, a trade organization's newsletter sent via facsimile would not constitute an unsolicited advertisement, so long as the newsletter's primary purpose is informational, rather than to promote commercial products.

*In re Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005,* 2006 WL 901720, 21 F.C.C.R. 3787, at 3814 (April 6, 2006) (emphasis added). With regard to what makes an advertisement "incidental," the F.C.C. states in a footnote:

> In determining whether an advertisement is incidental to an informational communication, the Commission will consider, among other factors, whether the advertisement is to a bona fide "informational communication." In determining whether the advertisement is to a *bona fide* "informational communication," the Commission will consider whether the communication is issued on a regular schedule; whether the text of the communication changes from issue to issue; and whether the communication is directed to specific regular recipients, *i.e.,* to paid subscribers or to recipients who have initiated membership in the organization that sends the communication. We may also consider the amount of space devoted to advertising versus the amount of space used for information or "transactional" messages and whether the advertising is on behalf of the sender of the communication, such as an announcement in a membership organization's monthly newsletter about an upcoming conference, or whether the advertising space is sold to and transmitted on behalf of entities other than the sender.

*\*4 Id.* at 3814 n. 187.

Unfortunately, the F.C.C. does not suggest what weight each factor should be given in assessing whether a fax is a bona fide informational communication. But even assuming, *arguendo,* that defendant's facsimile is a bona fide informational communication, the F.C.C. does not enumerate what other factors should be considered in determining whether an advertisement is "incidental." This court has not found, and the parties did not cite, any case law fleshing out what exactly makes an advertisement "incidental" under the TCPA.

In *Kenro,* the issue was whether a facsimile newsletter that contained jokes and editorial letters,

but that also contained approximately 30 to 50 percent advertising and encouraged readers to advertise in future issues, constituted an advertisement. 962 F.Supp. 1162, 1171 (S.D.Ind.1997). In denying defendant's motion to dismiss for failure to state a claim, the court stated (at 1171-72):

> We conclude that the allegations of the complaint could reasonably support a conclusion that the Fax Daily publication is, itself an advertisement for its own advertising services, or at least that its primary function is advertising, and that the unrelated editorial content is included for the purpose of evading the prohibitions of the TCPA. An interpretation of the TCPA that excludes from its coverage any publication that is not one-hundred percent advertising material would effectively render the Act's prohibition of unsolicited fax advertisements meaningless, for such an interpretation would allow advertisers to evade the TCPA simply by including items such as jokes, quotes from Shakespeare, or movie reviews, along with their advertisements.

This reasoning applies to the instant case. Defendant's advertisement occupied about 20 to 25 percent of the facsimile-a not insignificant amount of space. Given the absence of F.C.C. guidance and case law about the meaning of "incidental," and drawing all reasonable inferences in the light most favorable to plaintiff, a jury reasonably could conclude that the advertisement was not incidental, and thus that the facsimile taken as a whole violated the TCPA.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is denied.

## APPENDIX A

### The "Daily Plan-It™"

GREGORY P. TURZA, JD

### You *Can* Take it With You: Tips for A Mobile Office

Computers have become such a part of the corporate world, it would be almost impossible to find an organization without one. These days, with people working from home and while traveling, laptops are outselling their larger and bulkier desktop brethren. Most executives have both, although many are using their laptops as their primary computers, thanks to their portability. Here are some practical tips for setting the most out of your laptop, whether you're at the office, at home, or on the road.

**Buying tips**

The portable computer is now available at very affordable prices, with low-end models beginning at around $500. The more expensive models are on a par with desktops as far as speed and storage are concerned. When purchasing a laptop, pay attention to the following:

*5 • Stick to name band manufacturers. Customer support will be more reliable.

• If you plan to use it a lot on the go, find one that's under 5 lbs.

• Look for a model with a spill-resistant keyboard and a shock resistant hard drive.

• Purchase an extended warranty, generally for three years. Even if you have just one problem, it will pay for itself.

• Make sure that the screen is not too small for your eyes, and that the keyboard fits comfortably

under your fingertips.

• If you plan to use it at the office and on the go, set up a "docking station" at your desk which would include a keyboard, mouse, and monitor.

**Printing on the go**
If you're on the go and need to print important documents, it's not always convenient to find a Kinko's. Purchase a small travel printer which can easily fit in your computer bag. Both Hewlett Packard and Cannon have a variety of models that are less than 5 lbs and sell for under $250.00

**Protecting your stuff**
Whether you're stationary or on the road, you need to back up your staff. Purchase a USB flash drive, which is the size of a thumb, and you'll be able to back up and print from any computer.

Take measures to protect your unit from theft. Carry it an inconspicuous case, and never leave it unattended, even for a moment. All information should be protected with a secure password. If you're using it in a hotel room, bide it before you leave. And always back up your data.

Thanks to those measures, you can now take your work anywhere you go. Just don't forget to take some time off, or you may burn out.

N.D.Ill.,2008.
Holtzman v. Turza
Slip Copy, 2008 WL 2510182 (N.D.Ill.)

Motions, Pleadings and Filings (Back to top)

• 2008 WL 2851893 (Trial Motion, Memorandum and Affidavit) Gregory P. Turza's Reply Memorandum In Further Support of His Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6) (May 22, 2008)
 Original Image of this Document (PDF)
• 2008 WL 2851892 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendant's Motion to Dismiss (May 12, 2008)  Original Image of this Document (PDF)
• 2008 WL 2851891 (Trial Motion, Memorandum and Affidavit) Gregory P. Turza's Response Memorandum In Opposition to Plaintiff's ""motion to Reconsider and to Vacate" (May 7, 2008)
 Original Image of this Document (PDF)
• 2008 WL 2851890 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion to Reconsider and to Vacate Order of Dismissal Entered On April 24, 2008 (May 2, 2008)  Original Image of this Document (PDF)
• 2008 WL 2322141 (Trial Motion, Memorandum and Affidavit) Gregory P. Turza's Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6) (Apr. 14, 2008)  Original Image of this Document (PDF)
• 1:08cv02014 (Docket) (Apr. 9, 2008)
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Tools  Go

**EXHIBIT B**

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 5105 | **DATE** | 7/23/2008 |
| **CASE TITLE** | Stonecrafters, Inc. vs. Almo Distributing New York, Inc. | | |

**DOCKET ENTRY TEXT:**

Defendant's motion to dismiss [36] is denied.

Docketing to mail notices.

■ [ For further details see text below.]

## STATEMENT

Plaintiff, Stonecrafters, Inc., individually and on behalf of a purported class, alleges that defendant, Almo Distributing New York, Inc., sent it an unsolicited advertisement by facsimile ("fax"), in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1] Defendant has filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that its fax was not an "unsolicited advertisement" as that term is defined in the TCPA. For the reasons stated below, the motion is denied.

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not decide the merits of the case. Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). Under federal notice pleading, a complaint must contain both "a short and plain statement of the claim" showing that plaintiff is entitled to relief and sufficient factual allegations that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964-65 (2007) (quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to plaintiff. Moranski v. Gen. Motors Corp., 433 F.3d 537, 539 (7th Cir. 2005). Because the fax at issue is attached to the complaint, it is considered part of the complaint. See id. (citing Fed. R. Civ. P. 10(c)).

In this case, the disputed fax is an invitation to a "training session" entitled "It Pays to Learn" that was sent by Almo Specialty Products Group, whose slogan appears to be "Putting the the [sic] 'NEW' in appliance News." Underneath the title there are logos of three different appliance manufacturers, along with a caption or description of the products that each company offers, which read: (1) DCS Perfect Heat – Full Line Training (and the handwritten phrase "BBQ's"); (2) Sharp – High Speed Cooking System; and (3) Faber – Premium Ventilation. The fax also includes the dates and location of the training seminar, as well as contact information and a request to RSVP.

The TCPA prohibits the use of any fax machine, computer or other device to send an "unsolicited advertisement" to another fax machine. 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(5). According to the complaint, plaintiff did not invite the fax it received or give defendant permission to send it.

## STATEMENT

Thus, the only dispute for purposes of defendant's motion to dismiss is whether the fax was an advertisement regarding "the commercial availability or quality of any property, goods, or services." Id.

At this stage of the proceedings, the court concludes that the allegations in the complaint, including the attached fax, could reasonably support the conclusion that the fax is an unsolicited advertisement in violation of the TCPA. Although the fax does not propose a direct sale of any specific product, such overt advertising techniques are not required to maintain a cause of action under the TCPA. See Holtzman v. Turza, No. 08 C 2014, 2008 WL 2510182, at *2 (N.D. Ill. June 19, 2008). Instead, the statute is broader and prohibits any unsolicited advertisement regarding either the commercial availability of any property, goods, or services, or regarding the quality of those products or services. The fact that the fax offers a "training session" that is allegedly free to attend (although the fax does not explicitly state as much), does not insulate it from the requirements of the TCPA. See In re Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005, 2006 WL 901720, 21 F.C.C.R. 3787, at 3814 (April 6, 2006) (concluding that "facsimile messages that promote goods or services even at no cost, such as . . . free . . . seminars, are unsolicited advertisements under the TCPA's definition" because, in many cases, "'free' seminars serve as a pretext to advertise commercial products and services"). The products advertised in the fax, specifically those products manufactured by DCS, Sharp, and Faber, which appear to be the basis for the training seminar, are commercially available products. By sending out this fax, it is evident that defendant hoped to either attract potential customers or, if nothing else, to promote the quality of those products at the training session. Either way, the court concludes that, at the pleading stage, the fax qualifies as an unsolicited advertisement under the TCPA.

In their motion, defendant primarily relies on two cases in arguing that its fax should not be considered an advertisement – Phillips Randolph Enterprises v. Adler-Weiner Research Chicago, Inc., 526 F. Supp. 2d 851 (N.D. Ill. 2007), and Ameriguard, Inc., v. University of Kansas Medical Center Research Institute, Inc., No. 06-0369-CV-W-ODS, 2006 WL 1766812 (W.D. Mo. June 23, 2006). The court concludes, however, that defendant's fax is fundamentally different from the faxes at issue in those cases. In Phillips, the defendant sent a fax inviting recipients to attend a research discussion regarding a new healthcare program sponsored by the Chicagoland Chamber of Commerce. 526 F. Supp. 2d at 852. The court concluded that the fax did not promote any commercially available product or service, but instead only a research study. Id. at 853. Likewise, in Ameriguard, the defendant sent a fax announcing the existence of a clinical drug trial for the prevention of diabetes and seeking individuals willing to participate. 2006 WL 1766812, at *1. The court held that the fax did not constitute an advertisement because it did not announce that the defendant was providing goods, services, or property, or in other words, the fax did "not suggest anything 'commercial.'" Id. Unlike the faxes in those cases, both of which involved non-commercial research studies, defendant's advertisement in this case is directly linked to commercially available appliances and even includes the logos of certain manufacturers whose products presumably will be the focus of the training session.

For all these reasons, defendant's motion to dismiss the complaint for failure to state a claim is denied.

1. Plaintiff's complaint originally included two state-law claims, but these counts have since been voluntarily dismissed.